**Opinion issued May 14, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-12-00280-CR

————————————

**LAURO MARIO GOMEZ-ARROYO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1330622**

---

## MEMORANDUM OPINION

Lauro Mario Gomez-Arroyo appeals his conviction for the felony offense of possession of a controlled substance. Gomez-Arroyo pleaded guilty and, in accordance with his agreement with the State, the trial court sentenced him to six

months' confinement in the Harris County jail. Gomez-Arroyo moved for a new trial asserting that he received ineffective assistance of counsel insofar as his attorney advised him to accept a plea bargain without investigating the case and, in particular, discovering the testimony of a potentially exculpatory witness. The trial court denied the motion. In his sole issue on appeal, Gomez-Arroyo contends that his trial counsel rendered ineffective assistance. We affirm.

## Background

One Saturday in December 2011, Gomez-Arroyo was a passenger in an automobile pulled over by police. After cocaine was found under Gomez-Arroyo's seat, he was arrested and charged with the state-jail-felony offense of possession of a controlled substance, namely, cocaine, in an amount less than one gram. Gomez-Arroyo's mother called Israel Santana, who agreed to represent Gomez-Arroyo.

Monday morning, Santana sent another attorney, Hector Villegas, to meet with Gomez-Arroyo. Villegas and a translator met briefly with Gomez-Arroyo, then met with the State. Villegas informed Gomez-Arroyo that the State, in exchange for a guilty plea, would agree to punish Gomez-Arroyo for a Class A misdemeanor instead of a state jail felony. *See* TEX PENAL CODE ANN. § 12.44(a) (West 2011). Gomez-Arroyo entered a guilty plea, and the trial court sentenced him to six months' confinement in the Harris County jail.

2

Gomez-Arroyo moved for a new trial asserting ineffective assistance of counsel. At the hearing on the motion for new trial, Gomez-Arroyo testified that Villegas and a translator met with him for approximately ten minutes before the guilty plea. Gomez-Arroyo conceded that Villegas explained that he faced a longer sentence if he tried the case and lost and also explained the immigration consequences of a conviction. However, Gomez-Arroyo said that Villegas did not ask him about anything that occurred on the night of his arrest and that, when Gomez-Arroyo attempted to tell Villegas his side of the story, Villegas interrupted, telling Gomez-Arroyo the plea offer was the best he could do and he would be found guilty at trial. Gomez-Arroyo also said that Villegas told him that if he did not accept the plea, he could be transferred to "another jail called T.D.C. and that [Villegas] would not be able to guarantee [Gomez-Arroyo's] safety there because they are more criminal people there." Gomez-Arroyo said that he did not want to plead guilty, but was offered no other options.

Villegas also testified at the motion for new trial hearing. He testified that when he arrived at court, he read Gomez-Arroyo's file, including the offense report and the charging instrument. He said that he met with Gomez-Arroyo and went through the file with him. Villegas asked Gomez-Arroyo questions about what happened on the night of the arrest to ascertain whether his version of events was substantially different from the offense report. Gomez-Arroyo did not make any

3

comments or say anything to indicate the offense report was incorrect. After Villegas explained the possible difficulties of trial, he asked whether Gomez-Arroyo wanted him to reset the case or get an offer. Gomez-Arroyo never indicated that he wanted to try the case. Instead, he said "Go ahead. Go see what they want to do." Villegas took this as an instruction to seek a plea offer. He was able to get a plea offer of misdemeanor punishment, under Penal Code section 12.44(a), which Gomez-Arroyo decided to accept. Villegas said that he met with Gomez-Arroyo for about fifteen to twenty minutes before the plea.

Villegas denied telling Gomez-Arroyo that a jury would believe the officer over him, and instead explained that he told Gomez-Arroyo that if the police officer came to trial and testified to the information found in the offense report, Gomez-Arroyo would have "a tough time" winning at trial. Villegas also denied telling Gomez-Arroyo that he would be transferred to T.D.C. or even mentioning T.D.C. at all.

The trial court denied the motion for new trial. Gomez-Arroyo appeals.

## Ineffective Assistance of Counsel

In his sole issue, Gomez-Arroyo contends Villegas rendered ineffective assistance "because he failed to investigate the existence of an exculpatory witness: the owner of the car where the drugs were alleged to be found."

4

## A. Standard of Review

When, as here, the ineffective assistance claim is asserted by a defendant in a motion for new trial, and that motion is denied after an evidentiary hearing, we review the denial of the motion under an abuse of discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by rule,* TEX. R. APP. P. 21.8(b); *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)); *Anderson*, 193 S.W.3d at 39. In addition, we do not substitute our judgment for that of the trial court; rather we decide whether the trial court's decision was arbitrary or unreasonable. *Charles*, 146 S.W.3d at 208 (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). Accordingly, a trial court only abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *Id.*

When the trial court makes no express findings of fact regarding the denial of a motion for new trial, appellate courts should "impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit findings are both reasonable and supported in the record." *Id.* at 213; *Escobar v.*

*State*, 227 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005)). Additionally, in our review of a motion for new trial, we "afford almost total deference" to a trial court's determination of facts, especially when those findings turn on an evaluation of the credibility and demeanor of witnesses. *Quinn v. State,* 958 S.W.2d 395, 401 (Tex. Crim. App. 1997) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see Charles*, 146 S.W.3d at 208 (stating court of appeals defers to trial court's resolution of historical facts in motion for new trial hearing); *see also Acosta v. State*, 160 S.W.3d 204, 210 (Tex. App.—Fort Worth 2005, no pet.) ("At a hearing on a motion for new trial, the trial judge is the trier of fact and the sole judge of the credibility of the witnesses.").

## B.    Applicable law

We review claims for ineffective assistance of counsel under the two-pronged analysis set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Accordingly, "[i]n order for an appellate court to find that counsel

6

was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

Under the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2052). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). An appellant must show more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067). "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068–69). Failure to sufficiently prove either prong of *Strickland* defeats a claim for ineffective assistance of counsel. *See Strickland*, 466 U.S. at 700, 104 S. Ct. at 2074. Accordingly, when the prejudice prong of the *Strickland* test is dispositive, we need address only that prong on appeal. *See My Thi Tieu v. State,* 299 S.W.3d 216,

7

225 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069).

**C.   Analysis**

Gomez-Arroyo contends that counsel's performance was deficient because counsel failed to interview an allegedly exculpatory witness. Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led the attorney to change his recommendation as to the plea. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). This assessment, in turn, will depend in large part on a prediction that the evidence likely would have changed the outcome of trial. *Id.* To succeed on this claim, Gomez-Arroyo must show that "such witnesses were available and [he] would benefit from their testimony." *Perez*, 310 S.W.3d at 894 (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)).

For example, in *Butler v. State*, the Court of Criminal Appeals held counsel's deficient representation prejudiced the defendant where counsel failed to seek out and interview an alibi witness as well as two eyewitnesses who could testify to misidentification of the defendant. 716 S.W.2d 48, 56 (Tex. Crim. App. 1986). The exculpatory witnesses testified at the motion for new trial hearing; one

testified that the defendant was with her at her apartment at the time of the robbery and the other two said they saw the man who committed the robbery and it was not defendant. *Id.* at 55. Likewise, in *In re I.R.*, the El Paso Court of Appeals found that the juvenile defendant was prejudiced by counsel's deficient performance. 124 S.W.3d 294, 300 (Tex. App.—El Paso 2003, no pet.). Trial counsel had failed to interview a witness, Hayden, despite being told of his existence by I.R.'s mother. *Id.* at 299. Hayden testified at the motion for new trial hearing, stating that I.R. was in New Mexico with Hayden on the day of the alleged assault. *Id.* at 297. The court, noting that Hayden was a disinterested witness, held that the failure to investigate Hayden and discover the exculpatory testimony was sufficient to undermine the court's confidence in the outcome of the case and, therefore, I.R. had been prejudiced. *Id.* at 300.

Gomez-Arroyo contends that the driver of the car in which the cocaine was found could have provided exculpatory testimony. Specifically, Gomez-Arroyo contends the driver would have testified that the cocaine in the car did not belong to Gomez-Arroyo, if Gomez-Arroyo's counsel had only conducted a more thorough investigation. But no evidence adduced at the motion for new trial hearing addresses the availability of the driver of the car. Nor does the record demonstrate that the driver's testimony would benefit Gomez-Arroyo. Absent such a showing, Gomez-Arroyo has not established his ineffective assistance

9

claim. *See Melancon v. State*, 66 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding appellant failed to show prejudice in ineffective assistance claim where record contained no evidence of what testimony the alleged exculpatory witnesses could provide); *see also Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("[A] claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the case."); *cf. Butler*, 716 S.W.2d at 56 (holding defendant carried burden of proving prejudice where witnesses testified at motion for new trial hearing, setting forth exculpatory evidence they could have offered had counsel properly investigated defendant's case); *In re I.R.*, 124 S.W.3d at 300 (same).

We overrule Gomez-Arroyo's sole issue.[1]

---

[1] The State initially contended that we lack jurisdiction because there is no certification in the record showing Gomez-Arroyo has the right of appeal. *See* TEX. R. APP. P. 25.2(d) ("The appeal must be dismissed if a certification that shows the defendant has the right of appeal has not been made part of the record."). But the record has since been supplemented with the trial court's findings, which make clear that it granted Gomez-Arroyo permission to appeal the denial of his motion for new trial. *See* TEX. R. APP. P. 25.2(a)(2)(B) (defendant in plea bargain case has right to appeal those matters the trial court grants permission to appeal).

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, dissenting. Dissent to follow.

Do not publish. TEX. R. APP. P. 47.2(b).